Tuesday                    10th

October, 2006.


Tina Gilman, s/k/a
 Tina M. Gilman,                                                          Appellant,

 against               Record No. 1928-04-3
                       Circuit Court No. CR04000518-00

Commonwealth of Virginia,                                                 Appellee.


Upon Rehearing En Banc

Before Chief Judge Felton, Judges Benton, Elder, Humphreys, Clements,
Kelsey, McClanahan, Haley, Petty and Beales

William Alexander Efird, III, Assistant Public Defender (Office of
the Public Defender, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


        By opinion dated April 4, 2006, a divided panel of this Court affirmed the judgment of the trial

court.  See Gilman v. Commonwealth, 48 Va. App. 16, 628 S.E.2d 54 (2006).  On May 16, 2006, we

stayed the mandate of that decision and granted rehearing *en banc*.  Upon reconsideration, the judgment

of the trial court is affirmed without opinion by an evenly divided Court.  Accordingly, the opinion

previously rendered by a panel of this Court on April 4, 2006 is withdrawn, and the mandate entered on

that date is vacated.  The appellant shall pay to the Commonwealth of Virginia thirty dollars damages.

        Judges Clements, Kelsey, McClanahan, Haley and Beales voted to affirm the judgment of the

trial court.  Chief Judge Felton and Judges Benton, Elder, Humphreys and Petty voted to reverse the

judgment.

The Commonwealth shall recover of the appellant the costs in this Court, which costs shall include a total fee of $925 for services rendered by the Public Defender on this appeal, in addition to counsel's necessary direct out-of-pocket expenses, and the costs in the trial court.

This order shall be published and certified to the trial court.

Costs due the Commonwealth by
  appellant in Court of Appeals of Virginia:

Public Defender          $925.00     plus costs and expenses

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **16th** *day of* **May, 2006**.

Tina Gilman, s/k/a
 Tina M. Gilman, Appellant,

 against          Record No. 1928-04-3
                  Circuit Court No. CR04000518-00

Commonwealth of Virginia, Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Felton, Judges Benton, Elder, Frank, Humphreys,
Clements, Kelsey, McClanahan, Haley, Petty and Beales

On April 17, 2006 came the appellant, by court-appointed counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on April 4, 2006, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on April 4, 2006 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established:  Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed.  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellant shall file twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:    Judges McClanahan, Haley and Retired Judge Fitzpatrick[*]
Argued at Salem, Virginia


TINA GILMAN, S/K/A
 TINA M. GILMAN
                                                          OPINION BY
v.       Record No. 1928-04-3        JUDGE ELIZABETH A. McCLANAHAN
                                                          APRIL 4, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

William Alexander Efrid, III (Office of the Public Defender, on
brief), for appellant.

Susan L. Parrish, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


        Tina Gilman appeals her conviction for contempt of court.  She argues that on appeal of

her contempt conviction in juvenile and domestic relations district court (JDR court), the circuit

court erred in admitting into evidence a Certificate of Conviction (certificate) prepared by the

JDR judge pursuant to Code § 18.2-459.  The certificate outlined the circumstances that led the

JDR judge to hold Gilman in contempt.  Gilman claims the admission of the certificate violated

her Sixth Amendment right to confrontation.  We disagree and affirm her conviction.

        [*] Judge Fitzpatrick participated in the hearing and decision of this case prior to the
effective date of her retirement on March 31, 2006.

I. Background

The facts involved in this appeal are not in dispute. Gilman was convicted of contempt in the Henry County JDR Court and appealed to the Henry County Circuit Court. The circuit court admitted and considered the certificate prepared by the JDR judge pursuant to Code § 18.2-459.[1]

The certificate indicates that appellant was convicted of contempt for "[m]isbehavior" and "[d]isobedience or resistance." More specifically, the certificate states that the JDR judge

> certifies pursuant to Virginia Code § 18.2-459 that the defendant named herein is IN CONTEMPT under Code § 18.2-456 and is punished summarily for contempt under Code § 18.2-458 for the following: Misbehavior in the presence of the court, or so near thereto as to obstruct the administration of justice; . . . [and] Disobedience or resistance of . . . [a] person to any lawful process, judgment, decree or order of the court, including failure to appear or intentional obstruction of a witness under Code § 19.2-267.

The certificate also sets forth the "circumstances" of the conviction. Gilman was before the court because her daughter was in foster care, and the "evidence" showed that Gilman tested positive for illegal drugs two months earlier. Thus, "the court . . . ordered a drug screen. [Gilman] said she needed something to drink and then left the building." For this contempt, Gilman was fined by the JDR court twenty-five dollars and sentenced to ten days in jail. The certificate is signed by the JDR judge.

---

[1] Code § 18.2-459 provides:

> Any person sentenced to pay a fine, or to confinement, under § 18.2-458, may appeal therefrom to the circuit court . . . in which the sentence was pronounced . . . . If such appeal be taken, a certificate of the conviction and the particular circumstances of the offense, together with the recognizance, shall forthwith be transmitted by the sentencing judge to the clerk of such circuit court, who shall immediately deliver the same to the judge thereof. Such judge may hear the case upon the certificate and any legal testimony adduced on either side, and make such order therein as may seem to him proper.

The circuit court judge admitted the certificate over Gilman's Sixth Amendment objection. Gilman presented no evidence in her defense. Accordingly, the circuit court convicted Gilman of contempt and sentenced her to five days in jail.[2]

## II. Analysis

Gilman argues she was entitled to a trial *de novo* in the circuit court on her appeal from the JDR court, pursuant to Code § 16.1-136, and the circuit court's admission of the certificate, pursuant to Code § 18.2-459, over her objection, violated her right to confront witnesses as guaranteed by the Sixth Amendment.

Specifically, Gilman maintains she was "not afforded an opportunity to confront the [JDR] judge who prepared the certificate. Without an opportunity to cross-examine [the judge], this testimonial hearsay should have been excluded" based on the United States Supreme Court's recent decision in Crawford v. United States, 541 U.S. 36 (2004). In Crawford, the Court held that the Confrontation Clause[3] does not permit the introduction of out-of-court testimonial evidence at trial unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. Id. at 68.[4]

---

[2] Although the Statement of Facts submitted in this case indicates the defendant was sentenced to a jail term of ten days, the August 10, 2004 circuit court order imposed a sentence of five days. The order controls. See Bennett v. Commonwealth, 33 Va. App. 335, 342-46, 533 S.E.2d 22, 26-28 (2000) (*en banc*); Kern v. Commonwealth, 2 Va. App. 84, 88, 341 S.E.2d 397, 400 (1986).

[3] The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

[4] In redefining the scope of the Confrontation Clause, Crawford overruled the portion of Ohio v. Roberts, 448 U.S. 56 (1980), that had authorized admission of hearsay evidence based on whether it fell within a "'firmly rooted hearsay exception'" or bore "'particularized guarantees of trustworthiness.'" Crawford, 541 U.S. at 60 (quoting Roberts, 448 U.S. at 66).

In this case, the circuit court admitted into evidence the certificate setting forth the circumstances of Gilman's contempt in accordance with the express terms of Code § 18.2-459. Challenging the constitutionality of Code § 18.2-459, Gilman contends that the certificate constituted out-of-court testimonial evidence in violation of the Confrontation Clause.

In our analysis of Gilman's constitutional challenge to Code § 18.2-459, we are guided by basic principles of judicial review. "[A]ll actions of the General Assembly are presumed to be constitutional." Etheridge v. Medical Ctr. Hosps., 237 Va. 87, 94, 376 S.E.2d 525, 528 (1989). "This presumption is 'one of the strongest known to the law.'" Boyd v. County of Henrico, 42 Va. App. 495, 507, 592 S.E.2d 768, 774 (2004) (quoting Harrison v. Day, 200 Va. 764, 770, 107 S.E.2d 594, 598 (1959)). "Under it, courts must 'resolve any reasonable doubt' regarding the constitutionality of a law in favor of its validity." Id. (quoting In re Phillips, 265 Va. 81, 85, 574 S.E.2d 270, 272 (2003)). "'To doubt is to affirm.'" Id. (quoting Peery v. Bd. of Funeral Dirs., 203 Va. 161, 165, 123 S.E.2d 94, 97 (1961)).

It is well established that the Confrontation Clause is limited to trials in criminal prosecutions, whereas a summary proceeding for a petty direct contempt is neither a trial nor a criminal prosecution within the scope of the Sixth Amendment. Nor is there a constitutional right of appeal from such a proceeding. In this instance, however, the General Assembly has created a statutory right of appeal from JDR court to circuit court, where the certificate from the JDR court is allowed into evidence and the JDR judge is prohibited from being called as a witness. The proceeding in circuit court is thus a unique statutory hearing requiring a *de novo* determination, not a trial *de novo*, as in other appeals from district courts. As such, the admission of the certificate pursuant to Code § 18.2-459 did not implicate any of Gilman's Confrontation Clause rights, and we affirm the trial court.

- 4 -

The common law is clear that "[c]ontempt proceedings are *sui generis*." Wilson v. Commonwealth, 23 Va. App. 318, 323, 477 S.E.2d 7, 9 (1996) (internal quotation marks and citation omitted). As explained in Myers v. United States, 264 U.S. 95, 104-05 (1924), "[w]hile contempt may be an offense against the law and subject to appropriate punishment, certain it is that since the foundation of our government proceedings to punish such offenses have been regarded as *sui generis* and not 'criminal prosecutions' within the Sixth Amendment or common understanding."[5] The "confrontation" guaranteed by the Sixth Amendment "is confrontation at trial," Nelson v. O'Neil, 402 U.S. 622, 626 (1971), and it is well settled that one who commits a petty direct contempt of court is not entitled to a trial, United Mine Workers of America v. Bagwell, 512 U.S. 821, 832 (1994).

Appellant was convicted in the JDR court under Code § 18.2-456 for a direct summary contempt.[6] The maximum punishment for a violation under this statute is a fine of $250 or

---

[5] See also Ex Parte Grossman, 267 U.S. 87, 117 (1925) ("Contempt proceedings are *sui generis* because they are not hedged about with all the safeguards provided in the bill of rights for protecting one accused of ordinary crime from the danger of unjust conviction."); Levine v. United States, 362 U.S. 610, 616 (1960) (explaining that challenges to the fairness of criminal contempt proceedings are "derive[d] from the Due Process Clause and not from one of the explicitly defined procedural safeguards of the Constitution"); Sassower v. Sheriff, 824 F.2d 184, 188-89 (1987) ("The constitutional standard governing criminal contempt proceedings is not derived from the specific requirements of the sixth amendment. . . . Although we are bound by Bloom v. Illinois, 391 U.S. 194, 201 [ ] (1968), to recognize that 'criminal contempt is a crime in the ordinary sense,' the distinction between petty criminal contempt and serious contempt crimes has remained vital since that case was decided. . . . The circuit courts continue to recognize the vitality of the constitutional distinction between serious crimes and criminal contempt." (citations omitted)).

[6] Appellant does not contest the characterization of the conviction as direct contempt.

imprisonment for 10 days,[7] thus constituting a petty criminal contempt.[8]  In such a petty direct summary contempt, "'[w]here the contempt is committed in the presence of the court, it is competent for it to proceed upon its own knowledge of the facts, and to punish the offender without further proof, and without issue or trial in any form.'"  Davis v. Commonwealth, 219 Va. 395, 398, 247 S.E.2d 681, 682 (1978) (quoting Burdett v. Commonwealth, 103 Va. 838, 845-46, 48 S.E. 878, 880-81 (1904)); see also In re: Chaplain, 621 F.2d 1272, 1276 (4th Cir. 1980) ("[T]he very nature of the summary procedure contemplates that citation, conviction and, ordinarily, punishment, will be accomplished in one fell swoop.").  This is due to the fact that "[c]ontempt is a singular proceeding in our jurisprudence which implicates the trial court itself in both the offense and its adjudication and requires treatment suitable to this anomaly."  Baugh v. Commonwealth, 14 Va. App. 368, 372, 417 S.E.2d 891, 894 (1992).[9]  That a court may punish

---

[7] Code § 18.2-458.

[8] Our discussion is limited to petty contempt violations, those punishable or punished by no more than six months in jail.  Serious contempt violations warrant a jury trial.  See Codispoti v. Pennsylvania, 418 U.S. 506, 511-12 (1974); see also Bloom, 391 U.S. at 198.  The dissent makes no distinction between petty direct summary contempt and other criminal contempts.  Such an analysis necessarily leads to the erroneous conclusion that Crawford implicitly abolishes petty direct summary contempt proceedings and thereby renders unconstitutional Chapter 10, Article 5 of Title 18.2 of the Code (Contempt of Court) (Code §§ 18.2-456 through -459), and Code § 19.2-271 (prohibiting judicial officers from testifying).

The dissent's analysis, if applied to federal statutes, would also abolish summary proceedings for petty direct contempt in federal courts.  See 18 U.S.C. § 401 (statutory authority to federal judges); 28 U.S.C. § 636(e)(2) (statutory authority to federal magistrates); Fed. R. Crim. P. 42(b) (summary procedure for direct criminal contempt).

Without the power to adjudicate such contempt summarily, "judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them."  Ex Parte Terry, 128 U.S. 289, 313 (1888).

[9] See also Bagwell, 512 U.S. at 832 ("[P]etty, direct contempts in the presence of the court traditionally have been subject to summary adjudication."); Cooke v. United States, 267 U.S. 517, 534 (1925) (noting that in a direct contempt situation "[t]here is no need of evidence or assistance of counsel before punishment, because the court has seen the offense"); Carter v. Commonwealth, 96 Va. 791, 807, 32 S.E 780, 782 (1899) ("[I]t is a necessary incident to every

one who commits a direct contempt of court without the rights and benefits accorded a defendant

in a trial

> is . . . settled doctrine in the jurisprudence both of England and of
> this country, [and] never supposed to be in conflict with the liberty
> of the citizen. . . . [S]uch power, although arbitrary in its nature and
> liable to abuse, is absolutely essential to the protection of the
> courts in the discharge of their functions.

Ex Parte Terry, 128 U.S. 289, 313 (1888).  This power to convict and punish summarily

nevertheless "accords due process of law."  Fisher v. Pace, 336 U.S. 155, 159-60 (1949); see also

Pounders v. Watson, 521 U.S. 982, 991 (1997) (per curiam) (upholding petty direct summary

contempt conviction by state trial court upon due process challenge).[10]

Circuit Court Proceeding

The defendant has no constitutional right of appeal from a contempt conviction in JDR

court.  The United States Supreme Court has never held that the states are constitutionally

required to establish avenues of appellate review of criminal convictions.  M.L.B. v. S.L.J., 519

U.S. 102, 110 (1996); Rinaldi v. Yeager, 384 U.S. 305, 310 (1966); Griffin v. Illinois, 351 U.S.

12, 18 (1956).

In this instance, however, the General Assembly has created a statutory right of appeal

pursuant to Code § 16.1-296(A).  That statute provides that any final order or judgment of a JDR

court may be appealed to the circuit court.  See Walker v. Dep't of Pub. Welfare, 223 Va. 557,

562-63, 290 S.E.2d 887, 890 (1982).  Where that appeal is taken by an adult on a conviction of

---

court of justice, whether of record or not, to fine and imprison for a contempt acted in the face of
the court." (internal quotation marks and citation omitted)).

[10] In upholding the petty direct summary contempt conviction in Pounders, the United
States Supreme Court explained that "states must have latitude in determining what conduct so
infects orderly proceedings" that its summary adjudication as contempt will be permitted.
Pounders, 521 U.S. at 991.

- 7 -

an offense within the jurisdiction of the JDR court, the appeal shall be dealt with as an appeal

from a general district court,[11] except as limited by Code §§ 18.2-459 and 19.2-271.[12]

In contempt cases, Code §§ 16.1-136 and 18.2-459 explain and establish the rights of the

appellant in the circuit court.[13]  Code § 16.1-136 provides that the appeal "shall be heard de novo

in the appellate [circuit] court and shall be tried without formal pleadings in writing . . . ."  Code

§ 18.2-459 provides that the circuit court judge "may hear the case upon the certificate and any

legal testimony adduced on either side . . . ."[14]  And finally, Code § 19.2-271 specifically

prohibits the calling of a judge as a witness.  Epps v. Commonwealth, __ Va. App. __, __, __

S.E.2d __, __ (2006) (*en banc*) (Record Nos. 0591-04-2 and 2303-02-2) (judge may not testify in

---

[11] Code §§ 16.1-132 through 16.1-137.

[12] Code § 16.1-296(E).

[13] The Baugh Court's characterization of the proceeding in circuit court pursuant to Code § 18.2-459 is not dispositive of this case.  Baugh, 14 Va. App. at 372, 417 S.E.2d at 894. Though this Court in Baugh stated that the § 18.2-459 requirements are consistent with "the *de novo* nature of the trial," the Court rejected a Confrontation Clause challenge to Code § 18.2-459, while recognizing that a petty direct contempt "*requires* treatment suitable" to its nature as an "anomaly" under the common law.  Id. at 372, 373, 417 S.E.2d at 894 (emphasis added).  In doing so, the Court implicitly recognized that the proceeding was not in the "nature" of a full-blown trial as other appeals from district court to circuit court.  In addition, the holding in Baugh was based on the pre-Crawford "reliability" standard of Confrontation Clause analysis for determining admission of out-of-court testimonial evidence.

[14] We note that, much like Code § 18.2-459's certificate requirement, Rule 42(b) of the Federal Rules of Criminal Procedure requires a federal district court to prepare a contempt order reciting the facts of a summary contempt for purposes of appeal.  See Sacher v. United States, 343 U.S. 1, 11-13 (1952) (affirming trial judge's summary adjudication of direct criminal contempt pursuant to Fed. R. Crim. P. 42(a) (now Rule 42(b)) upon judge's certification of facts constituting direct contempt); cf. Kotowski v. Kotowski, 278 N.E.2d 856, 857 (Ill. App. 1971) ("Since the act was [a direct contempt], evidence is unnecessary and no record need be made. However, the court must enter a written order finding contempt and reciting fully, clearly and specifically the facts from which the contempt arose in order to preserve a meaningful right of appeal." (citations omitted)).

- 8 -

matter previously before him).[15] As such, the proceeding in circuit court is a unique statutory

hearing requiring a *de novo* determination, not a trial *de novo*, as in other appeals from district

courts.[16]

---

[15] "We have repeatedly held that an appeal to the circuit court from a court not of record under Code § 16.1-136 . . . grants to a litigant every advantage which would have been his had the case been tried originally in such court." Walker, 223 Va. at 563, 290 S.E.2d at 890 (citation omitted); see also Fairfax Co. Dep't of Soc. Servs. v. D.N., 29 Va. App. 400, 406, 512 S.E.2d 830, 832 (1999); Peple v. Peple, 5 Va. App. 414, 419, 364 S.E.2d 232, 236 (1988). There is no "advantage" of confronting one's accusers in a district court contempt proceeding due to the fact that it is the court itself that is the accuser. The right of confrontation exists neither at the district court level nor at the circuit court level, given the distinctive circumstances of petty direct summary contempt proceedings. In such proceedings, "'the otherwise inconsistent functions of prosecutor, jury and judge mesh into a single individual.'" United States v. Neal, 101 F.3d 993, 997 (4th Cir. 1996) (quoting Sandstrom v. Butterworth, 738 F.2d 1200, 1209 (11th Cir. 1984)).

[16] Though "*de novo*" in certain Acts of the General Assembly means the circuit court disregards the judgment of the court below and hears "evidence anew and new evidence," effectively conducting a new trial on the merits, Fairfax Co. Dep't of Soc. Servs., 29 Va. App. at 406, 512 S.E.2d at 832, in the case of a petty direct summary contempt proceeding under the above-referenced statutes, the General Assembly specifically limited the procedures applicable to the "*de novo*" determination by the circuit court.

Code § 18.2-459 provides that, in an appeal of a contempt finding from general district court, the circuit court "may hear the case upon the certificate and any legal testimony adduced on either side, and make such order therein as may seem to him proper." The circuit court's review of the certificate is analogous to the review of a magistrate judge's report in federal court, whereby, pursuant to 28 U.S.C. § 636, a magistrate judge may conduct hearings and submit his findings and recommendations to the district court. If either party objects to the findings and recommendations, the report is reviewed *de novo* by the district court judge. 28 U.S.C. § 636(b)(1)(C). In doing so, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]," and "may also receive further evidence." Id. Likewise, an appeal of a contempt conviction is reviewed *de novo*, and § 18.2-459 does not require the circuit court to accept the certificate of conviction as fact; it merely allows the certificate to be considered by the court, just as a certified prior conviction, DMV record, or court order would be considered. The circuit court judge can certainly ignore the judgment of the JDR court in his *de novo* determination. The statute simply allows the circuit court judge to consider the certificate in his own *de novo* determination of the legal question. Cf. United States v. Raddatz, 447 U.S. 667, 683-84 (1980) (affirming federal district court's *de novo* determination of federal magistrate's recommendation regarding a suppression motion). A defendant has the opportunity to present his or her own evidence, as in any other proceeding. There is nothing in the statement of facts before this Court to suggest that Gilman offered any evidence to the trial court or in any way contradicted or challenged the substance of what was set forth in the JDR certificate.

Such limited procedures have been used in other "*de novo*" determinations. See, e.g., Grogg v. Commonwealth, 6 Va. App. 598, 606-07, 371 S.E.2d 549, 553 (1988) (circuit court's

"[A] statute will be construed in such a manner as to avoid a constitutional question wherever this is possible." Eaton v. Davis, 176 Va. 330, 339, 10 S.E.2d 893, 897 (1940). Furthermore, the

> "[l]egislature is presumed to have known and to have had the common law in mind in the enactment of a statute. The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law."

Moses v. Commonwealth, 45 Va. App. 357, 361 n.2, 611 S.E.2d 607, 609 n.2 (2005) (*en banc*) (quoting Wicks v. Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974)); see also Washington v. Commonwealth, 46 Va. App. 276, 281, 616 S.E.2d 774, 777 (2005) (*en banc*). The common law is clear that "[c]ontempt proceedings are *sui generis*," Wilson, 23 Va. App. at 323, 477 S.E.2d at 9 (internal quotation marks and citation omitted), and are "not 'criminal prosecutions' within the Sixth Amendment." Myers, 264 U.S. at 104-05.

In addition, "'[w]hen the legislature comes to pass a new law or to amend an old one, it is presumed to act with full knowledge of the law as it stands bearing upon the subject with which it proposes to deal.'" Powers v. County School Board, 148 Va. 661, 668-69, 139 S.E. 262, 264 (1927) (quoting School Board v. Patterson, 111 Va. 482, 487-88, 69 S.E. 337, 339 (1910)). Code § 18.2-459, the right of appeal to the circuit court allowing the use of the JDR certificate, was amended by the General Assembly as recently as 1975, twenty-five years after Code §§ 16.1-136, 16.1-296(A), and 19.2-271 were included in the Code of 1950. "It is elemental that the legislature is presumed to know the law in effect when it enacts subsequent laws." Tharpe v.

---

review of juvenile court order transferring jurisdiction of minor's criminal trial to circuit court); Williams v. Auto Brokers, 6 Va. App. 570, 575, 370 S.E.2d 321, 324 (1988) (full commission's review of deputy commissioner's decision in workers' compensation case); see also School Bd. of Campbell Co. v. Beasley, 238 Va. 44, 48, 380 S.E.2d 884, 887 (1989) (action under Code § 22.1-214(D) regarding disabilities education program where circuit court decides case based on records of administrative proceedings and any additional evidence at the request of either party).

Commonwealth, 18 Va. App. 37, 43, 441 S.E.2d 228, 232 (1994). "'Two statutes which are closely interrelated must be read and construed together and effect given to all of their provisions. They should be construed, if possible, so as to harmonize, and force and effect should be given the provisions of each.'" Id. (quoting ACB Trucking, Inc. v. Griffin, 5 Va. App. 542, 547-48, 365 S.E.2d 334, 337-38 (1988)).

Because the JDR court proceeding is not a criminal prosecution within the scope of the Sixth Amendment, there is no constitutional right to trial at the JDR court, no constitutional right of appeal, a statutory prohibition against calling a judge as a witness, and because the General Assembly provided a statutory right of appeal with the caveat that a certificate from the JDR court could be used in that appeal, the General Assembly could not have intended to give birth to a constitutional right to cross-examine the JDR judge at the appeal—a right that the defendant would not otherwise have in the JDR court or the circuit court in a petty direct summary contempt proceeding.

Accordingly, in a petty direct summary contempt appeal, Code § 18.2-459 does not implicate the rights of an appellant under the Confrontation Clause.

Affirmed.

Fitzpatrick, J., dissenting.

I respectfully dissent and would hold that the certificate of conviction submitted by the juvenile and domestic relations court judge (JDR judge) is testimonial hearsay. Thus, its admission in appellant's circuit court trial *de novo* violated appellant's rights under the Confrontation Clause of the Sixth Amendment.[17]

The Supreme Court of the United States first made the distinction between testimonial and non-testimonial hearsay in Crawford v. Washington, 541 U.S. 36 (2004). While the Court declined "to spell out a comprehensive definition of 'testimonial,'" it offered guidance as to what should be considered "testimonial" in that opinion. Id. at 68. The Court found that the Confrontation Clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" Id. at 51 (citation omitted). The Court defined testimony as a "'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Id. (citation omitted).

---

[17] As an initial matter, I would hold that appellant's right of confrontation is ensured in a criminal contempt proceeding as a matter of due process. While not all constitutional rights apply to contempt proceedings, courts have afforded litigants being charged with contempt a broad panoply of rights to ensure that they receive due process, and there is no logical reason to fail to apply the rights secured by the Confrontation Clause to a contempt proceeding. Levine v. United States, 362 U.S. 610, 616 (1960) ("[p]rocedural safeguards for criminal contempts do not derive from the Sixth Amendment"); Davis v. Commonwealth, 219 Va. 395, 397-98, 247 S.E.2d 681, 682 (1978). See Holt v. Virginia, 381 U.S. 131, 136 (1965) (holding that a defendant charged with contempt has a right to an opportunity to be heard, to be represented by counsel, and to file motions and pleadings essential to his claims); Carter v. Commonwealth, 2 Va. App. 392, 396, 345 S.E.2d 5, 8 (1986) (deciding that the rules of evidence apply to a criminal contempt trial and requiring the prosecution to prove contempt beyond a reasonable doubt).

Courts have long noted the potential for abuse that accompanies contempt proceedings, because "contemptuous conduct, though short of a personal attack, may still provoke a trial judge and so embroil him in a controversy that he cannot 'hold the balance nice, clear and true between the State and the accused.'" Taylor v. Hayes, 418 U.S. 488, 501 (1974) (citation omitted). Thus, ensuring that individuals charged with contempt receive the benefit of Sixth Amendment protections "accords with our historic notions of elementary fairness. While we have no desire 'to imprison the discretion of judges within rigid mechanical rules,' we remain unpersuaded that 'the additional time and expense possibly involved . . . will seriously handicap the effective functioning of the courts.'" Id. at 500 (citations omitted).

- 12 -

The affidavit prepared by the JDR judge, the only evidence presented at appellant's circuit court trial, is the definition of "testimonial hearsay." We have noted earlier that one reason for entering such a certificate is because the trial judge "is an *indispensable witness* to the contemptuous event and his or her testimony is essential to prosecution of the offense on an appeal." Baugh v. Commonwealth, 14 Va. App. 368, 372, 417 S.E.2d 891, 894 (1992) (emphasis added). Because the trial judge's testimony is essential to the *de novo* appeal, and in this case was the only evidence against appellant, the judge himself is the defendant's "accuser"—the very individual that the Constitution ensures that a defendant will be able to confront. See Crawford, 541 U.S. at 43 ("the right to confront one's accusers is a concept that dates back to Roman times"); 541 U.S. at 46 ("our constitution [requires] that the person shall see his accuser" (citation omitted)); 541 U.S. at 51 ("[a]n accuser who makes a formal statement to government officers bears testimony"). The statements at issue here are completely accusatory, as they detail the judge's recitation of the facts that support his conclusion that appellant was in contempt of court.

Additionally, other courts have also determined that if the declarant is aware or expects that his statements may later be used at trial, this is a "determinative factor" in whether the statements are testimonial. United States v. Saget, 377 F.3d 223, 228-29 (2d Cir. 2004) (noting that the possible formulations set forth by the Supreme Court of what is "testimonial" all share that common feature). See also United States v. Arnold, 410 F.3d 895, 903-04 (6th Cir. 2005) ("the decisive inquiry should be 'whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime'" (citation omitted)); United States v. Manfre, 368 F.3d 832, 838 n.1 (8th Cir. 2004).

The manner of presenting this testimony, in a document certified by a judge that is analogous to an affidavit, bears a striking resemblance to the practice sanctioned by the Marian

- 13 -

bail and committal statutes identified by Crawford as a specific example of abuse of the Confrontation Clause protections. Under the Marian bail and committal statutes, justices of the peace were directed to "examine suspects . . . in felony cases and to certify the results [of that examination] to the court." Crawford, 541 U.S. at 44. The Supreme Court specifically noted that the practice sanctioned by the Marian statutes was an abridgement of the right to confrontation that the Sixth Amendment was designed to prohibit. Id. at 50. Here, the JDR judge "certified" his recollection of appellant's acts to the circuit court, and that certification constituted the only basis for appellant's conviction in his trial *de novo* in circuit court. The certificate's resemblance to the reports issued under the Marian statutes, coupled with the Supreme Court's reliance on such historical abuses in defining the word "testimonial," leads to the inescapable conclusion that the certificate is testimonial.

Because the certificate is testimonial, its admission into evidence is proper only if the Commonwealth proved that the JDR judge was unavailable to testify at the circuit court trial and that appellant had a prior opportunity to cross-examine him. It is undisputed that the JDR judge was unavailable to testify. Code § 19.2-271 prohibits any judge from testifying as a witness to matters that come before him in the course of his official duties. However, it is also undisputed that appellant did not have a prior opportunity to cross-examine the JDR judge and test the reliability of the certified testimony in the "crucible of cross-examination." Crawford, 541 U.S. at 61. Both parties concede that after appellant left the courthouse and failed to take a drug test, she had no opportunity to confront the JDR judge.

Although Code § 18.2-459 allows a circuit court judge to consider the certificate in the *de novo* contempt appeal, "[o]urs is a government whose powers are limited by the Constitution. Where statutory enactments and common-law rules come into conflict with constitutional principles, the latter must prevail." Commonwealth v. Owens-Corning Fiberglass Corp., 238 Va.

595, 600, 385 S.E.2d 865, 868 (1989). See Powell v. Pennsylvania, 127 U.S. 678, 686 (1888) ("if the incompatibility of the Constitution and the statute is clear or palpable, the courts must give effect to the former"). While actions of the General Assembly are presumed to be constitutional, as the majority emphasizes, courts will declare legislation invalid when it is "repugnant to some provision of the state or federal constitution." Etheridge v. Medical Center Hospitals, 237 Va. 87, 94, 376 S.E.2d 525, 528 (1989) (citation omitted). Because I would find that admission of the judge's certificate violates a defendant's constitutional rights, the authorizing state statute cannot override the constitutional requirement as outlined in Crawford.

Additionally, I disagree with the majority's contention that the appeal to circuit court was something less than a "trial *de novo*." An adult convicted of an offense in a juvenile and domestic relations court has the right to a trial *de novo*. Code §§ 16.1-296(E), 16.1-136. The procedural mandates set forth in Code § 18.2-459 do not alter the fundamental *de novo* nature of the trial. Baugh, 14 Va. App. at 373, 417 S.E.2d at 894 (the admission of the certificate of the lower court judge "does not effect the *de novo* nature of the trial"). An appeal to a circuit court "from a court not of record under Code § 16.1-136 annuls the judgment of the inferior tribunal as completely as if there had been no previous trial." Walker v. Department of Public Welfare of Page County, 223 Va. 557, 563, 290 S.E.2d 887, 890 (1992); see Austin v. Commonwealth, 42 Va. App. 33, 38, 590 S.E.2d 68, 71 (2003). Thus an appeal of appellant's contempt conviction is a trial *de novo* with its attendant procedural and substantive protections.

For the reasons stated, I dissent and would reverse appellant's conviction for contempt.